**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| AUTUMN SMITH, individually and on behalf of similarly situated individuals,<br><br>*Plaintiff*,<br><br>v.<br><br>EVIDENT ID, INC., a Delaware corporation,<br><br>*Defendant.* | )<br>)<br>)<br>) No. 21-cv-06911<br>)<br>) Hon. Joan Humphrey Lefkow<br>)<br>)<br>)<br>)<br>) **Jury Trial Demanded**<br>)<br>) |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Autumn Smith ("Plaintiff"), individually and on behalf of other similarly situated individuals, brings this First Amended Class Action Complaint against Defendant Evident ID, Inc. ("Defendant" or "Evident") for its violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") and to obtain redress for all persons injured by Defendant's conduct. Plaintiff alleges the following based on personal knowledge as to her own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by her attorneys.

**INTRODUCTION**

1. BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including handprints, fingerprints, facial geometry, and retinal scans. "Biometric information" is any information based on a biometric identifier, regardless of how it is converted or stored. 740 ILCS § 14/10. Collectively, biometric identifiers and biometric information are known as "biometrics."

1

2. This case concerns the misuse of individuals' biometrics by Defendant Evident ID, Inc., a leader of identity verification services. Using biometric enabled software, Defendant is capturing, collecting, storing, disseminating, or otherwise using the biometrics of Plaintiff and other Class members, without their informed written consent as required by law, to verify their identity.

3. BIPA provides, *inter alia*, that private entities, such as Defendant, may not obtain and/or possess an individual's biometrics unless they first:

(1) inform the person whose biometrics are to be collected *in writing* that biometric identifiers or biometric information will be collected or stored;

(2) inform the person whose biometrics are to be collected *in writing* of the specific purpose and the length of term for which such biometric identifiers or biometric information is being collected, stored and used;

(3) receive a *written release* from the person whose biometrics are to be collected, allowing the capture and collection of their biometric identifiers or biometric information; and

(4) publish publicly available retention guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a)-(b).

4. Compliance with BIPA is straightforward and may be accomplished through a single, signed sheet of paper. BIPA's requirements, which have been law in Illinois since 2008, bestow a right to privacy in biometrics and a right to make an *informed* decision when electing whether to provide or withhold biometrics.

5. Defendant's biometrically enabled software works by extracting biometric scans from individuals, such as scans of their face, and subsequently using the same for identity

verification purposes. Defendant's system includes the collection and storage of client information, including biometrics, on Defendant's own servers or hosted environments.

6. The Illinois Legislature has found that "biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, even sensitive information like Social Security numbers can be changed. Biometrics, however, are biologically unique to each individual and, once compromised, such individual has no recourse, is at a heightened risk for identity theft, and is likely to withdraw from biometric facilitated transactions." 740 ILCS 14/5(c). The risk is compounded when a person's biometrics are also associated with their other personally identifiable information.

7. The deprivation of the statutory rights conferred by BIPA constitutes the actual injuries the Illinois Legislature sought to prevent.

8. Plaintiff brings this action for statutory damages and other remedies as a result of Defendant's conduct in violating Plaintiff's state biometric privacy rights.

9. On Plaintiff's own behalf, and on behalf of the proposed Class defined below, Plaintiff seeks an injunction requiring Defendant to comply with BIPA, as well as an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

**PARTIES**

10. At all relevant times, Plaintiff has been a resident of Cook County, Illinois

11. Defendant Evident is a Delaware corporation that conducts business in Illinois, including in Cook County.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) et seq., because this case is a class action in which the

matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant; and none of the exceptions under subsection § 1332(d) apply.

13. This Court may assert personal jurisdiction over Defendant, because Defendant does business within Illinois and transacts business in Illinois such that it has sufficient minimum contacts with Illinois and/or has purposely availed itself of Illinois markets to make it reasonable for this Court to exercise jurisdiction over Defendant, and because Plaintiff's claims arise out of Defendant's in-state actions.

14. Specifically, Defendant purposefully advertises in Illinois and to Illinois residents on its website. Defendant posts Illinois-specific pricing for county court search fees, Illinois motor vehicle reports, so users of its identity verification services and background check services can identify pricing related to retrieving Illinois state or county records.[1]

15. In addition, through its various customers and clients, many of which Defendant knows provide their services and conduct business within the state of Illinois, Defendant has knowingly and purposely availed itself of Illinois markets such that it is aware that its identity-verification product and services will target Illinois citizens and its conduct will be subject to Illinois state laws including BIPA. For example, certain customers of Defendant operate online staffing services which connect prospective employees with employers looking to fill vacancies. Defendant provides identity verification services to customers which Defendant knows reside in Illinois, and which Defendant knows will be using its software to verify Illinois residents' identities. Thus, Defendant's website contains an Illinois Privacy Rights policy which

---

[1] https://www.evidentid.com/fees/ (Last accessed January 20, 2022)

4

acknowledges the disclosures that are required under the BIPA; nonetheless, Defendant fails to obtain users' consent as required.[2]

16. Defendant's identity verification feature includes address verification. Therefore, users subject to Defendant's identity verification services are required to provide Defendant with their address, including users located within the state of Illinois, further establishing Defendant's contacts to the state of Illinois.[3]

17. Venue is proper in this District because Plaintiff resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## THE BIOMETRIC INFORMATION PRIVACY ACT

18. "Biometrics" refers to a "biology-based set[s] of measurements." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." *Id.* at 1296.

19. BIPA was enacted in 2008 in order to safeguard individuals' biometrics as the result of the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA is codified as Act 14 in Chapter 740 of the Illinois Compiled Statutes.

20. As set forth in BIPA, biologically unique identifiers, such as a person's unique facial geometry, cannot be changed. 740 ILCS 14/5(c). The inalterable nature of biologically unique identifiers presents a heightened risk when an individual's biometrics are not protected in a secure and transparent fashion. 740 ILCS 14/5(d)–(g).

---

[2] https://www.evidentid.com/privacy-policy/ (Last accessed January 20, 2022)
[3] https://juzx033mfjp334nrs2lynzsu-wpengine.netdna-ssl.com/wp-content/uploads/2020/02/Evident-Identity-Verification-Brochure-–-February-2020.pdf (Last accessed January 21, 2022)

5

21. As a result of the need for enhanced protection of biometrics, BIPA imposes various requirements on private entities that collect or maintain individuals' biometrics, including facial scans.

22. Among other things, BIPA seeks to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). BIPA thus applies to entities that interact with two forms of biometric data: biometric "identifiers" and biometric "information." 740 ILCS 14/15(a)-(e).

23. BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including fingerprints, voiceprints, palm scans and facial geometry. "Biometric identifiers" are physiological, as opposed to behavioral, characteristics. BIPA's text provides a non-exclusive list of protected "biometric identifiers," including "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

24. "Biometric information" is defined by BIPA as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. This definition helps ensure that information based on a biometric identifier that can be used to identify a person is covered by BIPA. Collectively, biometric identifiers and biometric information are known as, and herein referred to as "biometrics."

25. In BIPA, the Illinois General Assembly identified several distinct activities that may subject private entities to liability:

    a. possessing biometrics without a proper policy publicly available, 740 ILCS 14/15(a);

    b. collecting, capturing, purchasing, receiving, or obtaining biometrics, 740 ILCS 14/15(b);

    c. selling, leasing, trading or profiting from biometrics, 740 ILCS 14/15(c);

    d.    disclosing or disseminating biometrics, 740 ILCS 14/15(d); and

    e.    failing to store, transmit, and protect from disclosure biometrics while using a reasonable standard of care.

26. As the Illinois Supreme Court has held, BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 33, 129 N.E.3d 1197, 1206 (Ill. 2019). The Illinois Supreme Court further held that when a private entity fails to comply with BIPA "that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id*

## FACTUAL BACKGROUND

27. Defendant boasts that it is a leader of identity verification services, claiming to offer over 5 billion verifiable individuals.[4]

28. In an effort to provide its customers with identity verification services, Defendant Evident developed a biometrically enabled identity verification software.

29. Defendant's software is often incorporated into its customers' applications and websites through an API or direct links and operates by collecting and analyzing individuals' facial biometrics as needed by Defendant's customers. For example, Defendant's customers utilize Defendant's software to perform background checks which includes an identity verification process.

30. In addition to their facial biometrics, Defendant requires that users submit state issued ID cards, driver's licenses, passports, or permanent resident cards which often includes their full legal name, date of birth, vehicle information, and/or address.

---

[4] https://www.evidentid.com (last accessed June 15, 2021)

31. Defendant's software is fully automated and works by comparing the facial geometry identified through consumers' uploaded drivers licenses or other identification documents with the facial geometry captured through an individual's uploaded live selfie. Defendant compares the facial biometrics captured from these two images to verify that the individual pictured in the identification document is the same individual submitting the live photo.[5]

32. Further, Defendant utilizes "Liveliness Detection" which captures a 3D facial geometry video of the user in order to determine whether the person is the same shown in their ID, and whether they are a living person using the software and not a "bad actor or bot."[6]

33. However, even though Defendant obtained Plaintiff's and the other Class members' facial geometry and accompanying biometric information, along with certain identifying information, Defendant failed to first obtain proper written consent as required by BIPA.

34. In addition, Defendant failed to obtain consent from Plaintiff and the other members of the Class prior to disseminating their biometrics to its customers or other parties, as required by BIPA.

35. Defendant advertises several pricing plans related to identity verification that are designed to meet the business needs of its clients. Defendant seeks to customize its verification solutions and pricing to the liking of its customers. Thus, Defendant also unlawfully profited directly from the facial biometrics it obtained from its customers' users, including Plaintiff and the other Class members, as Defendant was paid by its customers for use and access to its custom software.

**FACTS SPECIFIC TO PLAINTIFF SMITH**

---

[5] https://juzx033mfjp334nrs2lynzsu-wpengine.netdna-ssl.com/wp-content/uploads/2020/02/Evident-Identity-Verification-Brochure-–-February-2020.pdf (last accessed June 15, 2021)
[6] *Id.*

36. One of Defendant's customers, Wonolo Inc. ("Wonolo"), operates an online staffing platform that connects employers and job seekers.

37. Plaintiff Autumn Smith applied for a job through Wonolo's website and was required to verify her identity through Defendant's software.

38. In order to access Defendant's software, Plaintiff was directed from Wonolo to Defendant's portal through either a text message link or email link. Plaintiff accessed Defendant's portal and was required to submit a photo of her Illinois driver's license. Defendant then scanned her drivers license and captured her facial geometry and associated biometric information.

39. Plaintiff then submitted a live photo through Defendant's software, which then extracted Plaintiff's facial geometry and biometric information and compared to such information as was captured from her driver's license.

40. Defendant stored and then disseminated Plaintiff's facial biometrics to Wonolo without Plaintiff's knowledge.

41. Plaintiff, like the thousands of other Illinois residents who are members of the Class, never provided written consent allowing Defendant to capture, store, or collect her facial biometrics.

42. In addition, Defendant failed to obtain consent from Plaintiff and the other members of the Class prior to disseminating their biometrics to its customers or other parties, as required by BIPA.

## CLASS ALLEGATIONS

43. Plaintiff brings this action on behalf of herself and a class of similarly situated individuals pursuant to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Class defined as follows:

**Class**:
All individuals whose biometric identifiers or biometric information were

9

collected, captured, stored, received through trade, or otherwise obtained by Defendant within the state of Illinois any time within the applicable limitations period.

44. Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officer or director.

45. There are thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiff, the members can be easily identified through Defendant's records.

46. Plaintiff's claims are typical of the claims of the Class she seeks to represent, because the basis of Defendant's liability to Plaintiff and the Class is substantially the same, and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the Class.

47. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

    a. Whether Defendant collects, captures, or otherwise obtains facial biometric identifiers or biometric information from Illinois residents;

    b. Whether Defendant disseminated the biometrics of Class members without written consent;

    c. Whether Defendant obtained a written release from the Class members before capturing, collecting, or otherwise obtaining their facial biometric identifiers or biometric information;

    d. Whether Defendant's conduct violates BIPA;

    e. Whether Defendant's BIPA violations are willful or reckless; and

    f. Whether Plaintiff and the Class are entitled to damages and injunctive relief.

10

48. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

49. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class she seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

50. Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## COUNT I
**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*.**
**(On behalf of Plaintiff and the Class)**

51. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

52. Defendant Evident is a private entity under BIPA.

53. BIPA requires a private entity, such as Defendant, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the

subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

54. Plaintiff and the other Class members have had their "biometric identifiers," namely their facial geometry, collected, captured, or otherwise obtained by Defendant through its software. 740 ILCS 14/10.

55. Defendant captured, collected, stored, and/or used Plaintiff's and the other Class members' facial geometry and biometric information without valid consent in violation of BIPA.

56. Defendant's practice with respect to capturing, collecting, storing, and using biometrics fails to comply with the following provisions of BIPA:

 a. Defendant failed to inform Plaintiff and the members of the Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

 b. Defendant failed to inform Plaintiff and the Class in writing the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

 c. Defendant failed to obtain a written release, as required by 740 ILCS 14/15(b)(3); and

 d. Defendant failed to obtain informed consent to disclose or disseminate the Class' biometrics, as required by 740 ILCS 14/15(d)(1).

57. Defendant also unlawfully profited from the biometrics it obtained from its customers' users, including Plaintiff and the other Class members, as Defendant was paid by its customers on a per-verification basis for use and access to its custom software and users' biometrics in violation of 740 ILCS 14/15(c).

58. Defendant knew, or was reckless in not knowing, that the software that it provided and operated and which thousands of Illinois residents interacted with, would be subject to the provisions of BIPA, yet failed to comply with the statute.

59. By capturing, collecting, storing, using, and disseminating Plaintiff's and the Class members' facial biometrics as described herein, Defendant denied Plaintiff and the Class their right to statutorily required information and violated their respective rights to biometric information privacy, as set forth in BIPA.

60. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

61. Defendant's violations of BIPA, a statute that has been in effect since 2008, were knowing and willful, or were at least in reckless disregard of the statutory requirements. Alternatively, Defendant negligently failed to comply with BIPA.

62. Accordingly, with respect to Defendant's numerous violations of BIPA, Plaintiff, individually and on behalf of the proposed Class, prays for the relief set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the proposed Class, respectfully requests that this Court enter an Order:

a. Certifying the Class as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

b. Declaring that Defendant's actions, as set forth herein, violate BIPA;

c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA;

d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(2);

e. Awarding statutory damages of $1,000 for each negligent violation of the BIPA, pursuant to 740 ILCS 14/20(1);

f. Awarding reasonable attorneys' fees, costs, and other litigation expenses, pursuant to 740 ILCS 14/20(3);

g. Awarding pre- and post-judgment interest, as allowable by law; and

h. Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: January 26, 2022

Respectfully submitted,

AUTUMN SMITH, individually and on behalf of a class of similarly situated individuals

By: /s/ Jordan R. Frysinger
*One of Plaintiff's Attorneys*

David L. Gerbie
Jordan R. Frysinger
MCGUIRE LAW, P.C.

55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
dgerbie@mcgpc.com
jfrysinger@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*